```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :   CR-04-966 (FB)
         v.                 :
                            :   June 3, 2008
RUSSELL ALLEN,              :
                            :   Brooklyn, New York
              Defendant.    :
                            :
----------------------------X


         TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
         BEFORE THE HONORABLE VIKTOR V. POHORELSKY
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        ROSLYNN R. MAUSKOPF, ESQ.
                           UNITED STATES ATTORNEY
                           BY: CAROLYN POKORNY, ESQ.
                           ASSISTANT U.S. ATTORNEY
                           225 Cadman Plaza East
                           Brooklyn, New York  11201



For the Defendant:         XAVIER DONALDSON, ESQ.




Audio Operator:


Court Transcriber:         ARIA TRANSCRIPTIONS
                           c/o Elizabeth Barron
                           31 Terrace Drive, 1st Floor
                           Nyack, New York 10960
                           (215) 767-7700



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Criminal cause for a guilty plea in

2    CR-04-966, the United States of America against Russell

3    Allen.  Counsel, please state your appearances for the

4    record.

5          MS. POKORNY:  Good afternoon, your Honor.  Carolyn

6    Pokorny and Brendan King for the government.

7          MR. DONALDSON:  For Mr. Allen, Xavier R.

8    Donaldson.  Good afternoon.

9          THE COURT:  Good afternoon.  Please be seated.

10   Mr. Allen, I'm told that you're prepared to plead guilty to

11   a criminal offense.  The decision to do that is a serious

12   decision.

13         Before the Court can accept your guilty plea, the

14   Court has to be satisfied that you understand the rights

15   that you are waiving by pleading guilty and the consequences

16   that may occur once you plead guilty.

17         I'll discuss those matters with you today.  I'll

18   be asking you some questions as well.  The answers to the

19   questions must be given under oath so my courtroom deputy

20   now will administer an oath for you to take.

21         (Defendant is sworn)

22         THE CLERK:  Please state your name for the record.

23         THE DEFENDANT:  Russell Allen.

24         THE CLERK:  Thank you.

25         THE COURT:  Alright, Mr. Allen, you may be seated.

1    You've taken an oath to tell the truth.  That means you are

2    required to do so.  If you should lie or intentionally

3    mislead the Court today, you would be subject to prosecution

4    for the crime of perjury or making false statements.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If there's anything you do not

8    understand today, please don't hesitate to tell me.  I'll be

9    happy to clarify or provide further explanations about any

10   matter that's not entirely clear to you.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  How old are you?

14             THE DEFENDANT:   Thirty.

15             THE COURT:  How far did you go in school?

16             THE DEFENDANT:  GED.

17             THE COURT:  Have you had any difficulty

18   communicating with your attorney and understanding what he's

19   explained to you about the charges here, about your rights

20   or about anything else related to this matter?

21             THE DEFENDANT:  No, I have not.

22             THE COURT:  Are you now or have you recently been

23   under the care of a doctor or a psychiatrist for any reason?

24             THE DEFENDANT:  No, not at the moment.

25             THE COURT:  In the last 24 hours have you taken

1    any pills or drugs or medications of any kind or did you

2    have any alcoholic beverage to drink?

3              THE DEFENDANT:  No, I have not.

4              THE COURT:  Have you ever been hospitalized or

5    treated for any drug related problem like narcotics

6    addiction or something else like that?

7              THE DEFENDANT:  No, I have not.

8              THE COURT:  Is your mind clear now as you sit

9    here?

10              THE DEFENDANT:  Yes, it is.

11              THE COURT:  Mr. Donaldson, I presume you've

12    discussed the question of entering a guilty plea with Mr.

13    Allen.

14              MR. DONALDSON:  Thoroughly.

15              THE COURT:  In your view, does he understand the

16    rights that he'll be waiving by pleading guilty?

17              MR. DONALDSON:  Yes, he does.

18              THE COURT:  Do you have any question about his

19    competency to proceed today?

20              MR. DONALDSON:  No, I do not.

21              THE COURT:  Were you appointed or were you

22    retained, Mr. Donaldson?

23              MR. DONALDSON:  Retained.

24              THE COURT:  Mr. Allen, are you satisfied with the

25    assistance that Mr. Donaldson has given you thus far in this

1  case?

2  THE DEFENDANT:  Yes, I am.

3  THE COURT:  Do you feel that you need any more

4  time to discuss with him the decision to plead guilty before

5  we proceed today?

6  THE DEFENDANT:  No, I do not.

7  THE COURT:  I understand you're prepared to plead

8  guilty to a charge that's found in a superseding information

9  that's been prepared by the United States Attorney.

10  Let me ask you first, did you receive a copy of

11  the superseding information at some point?

12  THE DEFENDANT:  Yes, I did.

13  THE COURT:  Have you discussed the charge in this

14  information with your attorney?

15  THE DEFENDANT:  Yes.

16  THE COURT:  Do you understand the charge?

17  THE DEFENDANT:  Yes.

18  THE COURT:  Alright.  I'm going to go over the

19  charge in a little detail with you.  The superseding

20  information charges you with racketeering.

21  To be more specific, racketeering in connection

22  with an enterprise that has been denominated in the

23  information as the McGriff Enterprise (ph).

24  If the government were to have to prove this case

25  at a trial, it would have to prove several facts or a

1    variety of facts, actually.

2             First of all, they'd have to prove that an

3    enterprise similar to the one -- or an enterprise that is

4    like the one charged in the indictment actually existed.  An

5    enterprise for purposes of this statute is a group of

6    people, group of individuals, who work together to

7    accomplish objectives of the enterprise through the conduct

8    of certain kinds of criminal activities.

9             In this indictment it's charged that the objective

10   of the enterprise here was to make money.  And so the

11   government would have to prove there was such an enterprise.

12   A group of individuals who got together to make money.

13            And it's also charged that they went about making

14   money was through the commission of crimes including murder,

15   conspiracy to murder, sales of narcotics, money laundering.

16            And, also, that in order to promote the activities

17   of the enterprise, the members of the enterprise would

18   intimidate others through threats of violence and through

19   violence to prevent others from cooperating with law

20   enforcement.

21            So, the government would have to prove, first of

22   all, that such an enterprise existed.  They'd also have to

23   prove that you were one of the people who was part of this

24   enterprise.  You were one of the group of people who got

25   together and committed these kinds of acts or at least some

1    of those kinds of acts.

2              They'd have to prove that this enterprise and your

3    participation in it was ongoing in the period of time

4    between May of 2001 and November of 2001.

5              And they'd have to prove that you committed at

6    least two acts, racketeering acts, that is two crimes, of

7    the kinds specified by the law as the types of crimes that

8    are covered by the racketeering law.

9      They'd have to prove that the two crimes that you

10   committed in connection with that were, first, the murder of

11   Eric Smith, also known as E. Moneybags, on July 16th of 2001.

12             And they'd have to prove also a second act that

13   you conspired to murder Troy Singleton (ph).  And that

14   means -- and I'll explain conspiracy in a second -- that you

15   conspired to murder Troy Singleton during the period -- and

16   the conspiracy was ongoing in the period of time roughly

17   between July 1, 2001 and October 28, 2001.

18             Conspiracy means that you and at least one other

19   person agreed to work together to cause the death of Troy

20   Singleton.  That is that you both understood that you would

21   work together to accomplish that criminal purpose.

22             So, in order to prove this offense at trial, just

23   to summarize, if there was a trial, the government would

24   have to prove there was an enterprise, a group of people who

25   worked together through criminal conduct to make money.

1          They'd have to prove that you were one of the

2    people who was part of this enterprise.  And they'd have to

3    prove that you committed the two crimes I just mentioned

4    while you were participating in the enterprise and for the

5    purposes of advancing the goals of the enterprise.

6          Do you understand what I've explained to you about

7    this?

8          THE DEFENDANT:  Yes, Sir.

9          THE COURT:  This crime is a felony because it's

10   punishable by imprisonment for more than a year.  Because

11   it's a felony, you have the right to have this charge

12   brought against you by means of a document called an

13   indictment.

14          Right now the charge is brought against you by

15   means of a superseding information.  And an information is

16   different from an indictment in this respect.  An

17   information has never been reviewed by anybody other than

18   the prosecutor to see if the charges should go forward.

19          An indictment is a document that has, in fact,

20   been reviewed by a different group of people called a grand

21   jury.

22          A grand jury is a group of between sixteen and

23   twenty-three people, ordinary citizens.  Their task is to

24   listen to evidence presented by the prosecutor and make a

25   determination as to whether the evidence is sufficient to

1   establish probable cause the prosecutor wants to charge with

2   a crime actually committed the crime.

3            Now, you have the right to have this charge

4   brought against you by means of an indictment.  By means of

5   a document that's been reviewed by the grand jury.

6            You can waive that right.  But if you don't waive

7   the right, then the only way the government could continue

8   with this charge is to present evidence to the grand jury

9   and then have the grand jury vote on the indictment.

10            At least twelve of the members of the grand jury

11   would have to vote in favor of the indictment.  And if

12   twelve members, twelve or more, did not vote in favor, then

13   the charge couldn't proceed.

14            Do you understand what I've explained about your

15   right to indictment?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Have you discussed the concept of

18   waiving your right to indictment with your attorney?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Do you wish to waive your right to

21   indictment?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Has anybody threatened you or made any

24   promises to you to induce you to waive your right to

25   indictment?

1           THE DEFENDANT:  No, Sir.

2           THE COURT:  I have a document, it's entitled

3    "Waiver of Right to Indictment".  It appears to be signed by

4    you.  Let me ask you, please, to look at this document.

5           Is that your signature at the bottom of the page

6    there?

7           THE DEFENDANT:  Yes, Sir.

8           THE COURT:  Alright.  I find then that Mr. Allen

9    understands his right to indictment.  That he has knowingly

10   and voluntarily waived that right.  And so we will proceed

11   with this matter on the basis of the superseding

12   information.

13          The first and perhaps most important thing you

14   should understand, Mr. Allen, is that you have the right to

15   plead not guilty to the charge in this information even if

16   you're guilty.

17          Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  If you maintain a plea or if you enter

20   a plea of not guilty to the charge, you have the right to a

21   speedy and public trial before a jury with the assistance of

22   your attorney on this charge.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  At a trial, you would be presumed to

1    be innocent.  You would not have to prove that you were

2    innocent.  You would not have to prove anything.

3            The prosecution has the burden of proof at a

4    criminal trial.  And the prosecution's burden is to produce

5    evidence in court that is admissible and that satisfies a

6    jury unanimously that the defendant is guilty beyond a

7    reasonable doubt.

8            If the government could not meet that burden of

9    proof at your trial, then the jury would have the duty to

10   find you not guilty even if you were guilty.

11           Do you understand that?

12           THE DEFENDANT:  Yes.

13           THE COURT:  At a trial, witnesses for the

14   government would have to come to court and testify in your

15   presence.  Your attorney could cross-examine the witnesses.

16   He could object to the evidence the government tried to

17   introduce.  He could offer evidence in your behalf.  He

18   could require witnesses to come to court and testify in your

19   behalf if there were witnesses who had information that

20   might be useful to your defense.

21           Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  At the trial, you would have the right

24   to testify in your own behalf if you chose to testify.  You

25   could not, however, be required to testify.  The choice

1    would be entirely up to you.

2            And this is because the Constitution of the United

3    States guarantees that no defendant in a criminal case can

4    be required to take the witness stand and say something that

5    might be used to show that he's guilty.

6            If you chose to have a trial but chose not to

7    testify at the trial, the Court would instruct the jury that

8    they could not hold that against you.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  If, instead of going to trial, you

12   plead guilty and if your guilty plea is accepted, you will

13   be giving up your constitutional right to a trial and all

14   the other rights I've just discussed.

15           There will be no trial in this case.  You'll have

16   no right to appeal to a higher Court on the question of

17   whether or not you're guilty.

18           Judge Block will enter a judgement of guilty and

19   impose a sentence on you based solely on your plea of guilty

20   and without any trial whatsoever.

21           Do you understand that?

22           THE DEFENDANT:  Yes.

23           THE COURT:  If you plead guilty, I will have to

24   ask you some questions about what you did in order to

25   satisfy myself that you are guilty.

1        In doing that, you will be -- In answering the

2   questions, you will be giving up your right, the right I

3   mentioned a few moments ago, not to say something that can

4   be used to show that you're guilty.

5        Do you understand that?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Mr. Allen, are you willing to give up

8   your right to a trial and the other rights I've just

9   discussed with you?

10        THE DEFENDANT:  Yes, Sir.

11        THE COURT:  This is Judge Block's case.  And that

12   means Judge Block is the judge who will sentence you if you

13   plead guilty.  Judge Block is also the judge who will make

14   the final decision about whether to accept your guilty plea.

15        If you wish, you have the absolute right to have

16   Judge Block listen to the guilty plea.  And if you chose to

17   have him listen to the plea instead of me, you could suffer

18   no harm or prejudice of any kind because you made that

19   decision.

20        Do you understand me so far?

21        THE DEFENDANT:  Yes.

22        THE COURT:  You can waive your right to have Judge

23   Block listen to your guilty plea and permit me to listen to

24   your plea if you wish.

25        A recording is now being made of this proceeding.

1    A written transcript of this proceeding will be prepared for

2    Judge Block to review so that he can make the final

3    determination about whether to accept your plea.  And he may

4    also review that in connection with sentencing.

5              I have a document here that appears to be signed

6    by you which indicates you are willing to permit me to

7    listen to your plea.  And in doing that, of course, you'll

8    be giving up your right to have Judge Block listen to the

9    plea.

10             Let me ask you to review this document if you

11   would.  Is that your signature on this document?

12             THE DEFENDANT:  Yes, Sir.

13             THE COURT:  Do you, in fact, wish to give up your

14   right to have Judge Block listen to the plea and permit me

15   to listen to the plea?

16             THE DEFENDANT:  Yes, Sir.

17             THE COURT:  Do you make that decision voluntarily

18   and of your own free will?

19             THE DEFENDANT:  Yes, Sir.

20             THE COURT:  Has anybody threatened you or made any

21   promise to you to induce you to allow me to listen to the

22   plea?

23             THE DEFENDANT:  No, Sir.

24             THE COURT:  Alright.  I understand you do have an

25   agreement with the government concerning your plea.  And I

1    have a document here that appears to be the agreement.  It

2    bears today's date on the last page.  And it has various

3    signatures on the last page including one that also appears

4    to be yours.

5              Let me ask you if you would to examine the

6    document.  And is that your signature on the last page, Mr.

7    Allen?

8              THE DEFENDANT:  Yes, Sir.

9              THE COURT:  Before you signed the document, did

10   you read the entire document?

11             THE DEFENDANT:  Yes, Sir.

12             THE COURT:  Did you discuss the various terms of

13   this agreement with your attorney?

14             THE DEFENDANT:  Yes, Sir.

15             THE COURT:  Do you understand literally

16   everything, absolutely everything, in this document?

17             THE DEFENDANT:  Yes, Sir.

18             THE COURT:  Except for any promises in writing in

19   this document, did anyone make any promise to you to induce

20   you to plead guilty?

21             THE DEFENDANT:  No, Sir.

22             THE COURT:  Alright.  I'll mark this as Exhibit 1

23   for purposes of the proceeding today.  I'd like to review

24   with you now the potential punishment for this offense.

25             First of all, the statute under which you are

1   charged permits the Court to impose a term of imprisonment

2   of up to life in prison for this offense.

3           Do you understand that?

4           THE DEFENDANT:  Yes, Sir.

5           THE COURT:  The statute does no prescribe a

6   minimum term of imprisonment.  The statute also permits the

7   Court to impose a term of supervised release.  The term of

8   supervised release would commence after you completed any

9   term of imprisonment that's imposed.

10          The term of supervised release could last up to

11   five years.  While you're serving a term of supervised

12   release, you'll be required to comply with conditions set by

13   the Court.

14          If you fail to comply with any of the conditions,

15   the Court has the option to sentence you to serve further

16   time in prison.

17          And on each occasion, when the Court finds that

18   you have violated one or more of those conditions of

19   supervised release, the Court may impose an additional term

20   of imprisonment of up to five years without giving you any

21   credit for any time you have spent in prison previously,

22   with respect to this charge, either on your original

23   sentence or if there are multiple times when you've violated

24   conditions of release, even if you previously were sentenced

25   to serve additional time because of a violation.

1          The Court on the subsequent occasion can impose up

2    to five years without giving you any credit for the previous

3    times.

4          Do you understand that?

5          THE DEFENDANT:  Yes, Sir.

6          THE COURT:  You also may be fined up to $250,000

7    or twice the gross gain or loss from the criminal

8    activities.  Is there any computation as to gain or loss at

9    this point, Ms. Pokorny?

10         MS. POKORNY:  The gain, I suppose, would be what

11   he was paid.  And we're talking about under $15,000.

12         THE COURT:   Alright, so that they --

13         MR. DONALDSON:  Under $15,000.

14         THE COURT:  So, the effective maximum would be the

15   $250,000 for the fine.

16         MS. POKORNY:  Yes.

17         THE COURT:  Alright, so the effective maximum is

18   $250,000.  Is there a restitution amount, Ms. Pokorny?

19         MS. POKORNY:  There may be restitution

20   particularly because there's a murder victim.  And so

21   sometimes the families can put in for things like funeral

22   expenses.  We don't have an amount at this time.

23         THE COURT:  Okay.  So, you could be fined up to

24   $250,000.  The Court may also enter an order of restitution

25   to reimburse any victims of your offenses to the extent that

1   they suffered monetary financial loss because of the

2   offenses.

3           Do you understand that?

4           THE DEFENDANT:  Yes, Sir.

5           THE COURT:  And, finally, the Court will be

6   required to impose a special assessment of $100 with respect

7   to this offense.

8           Do you understand that?

9           THE DEFENDANT:  Yes, Sir.

10          THE COURT:  Mr. Donaldson, did you discuss with

11  Mr. Allen the operation of the sentencing guidelines?

12          MR. DONALDSON:  Yes.

13          THE COURT:  Alright.  Mr. Allen, in sentencing

14  you, the Court will have to consider some guidelines that

15  may affect the judge's determination with respect to the

16  sentence to impose.

17          Your attorney tells me he's talked about the

18  guidelines with you.  Do you recall discussing the subject

19  with him?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Alright.  I'll go over it just briefly

22  then.  Before sentencing you, Judge Block will receive

23  information about you and about the crime that's charged

24  here.  He'll have to consider various factors about those

25  matters and then make a determination about the guideline

level that applies to your case.

The guideline level that's determined in that fashion will prescribe a range of imprisonment that's the appropriate imprisonment -- or that's the recommended imprisonment, I should say, for a case.

The judge is not required to sentence you within the range of imprisonment that's recommended by the guidelines, however.  The judge could decide to impose a sentence that's above what the guidelines recommend.  Or he could decide to impose a term of imprisonment below what the guidelines recommend.

But, at a minimum, Judge Block will have to make a determination about what the proper guideline level is for your case.  And then he'll have to consider very carefully whether to sentence you in accordance with the guidelines or outside of the guidelines.

If he decides to sentence you outside of what the guidelines recommend, then he'll have to give good reasons for the departure that he decides on.

Do you understand that?

THE DEFENDANT:  Yes, Sir.

THE COURT:  What is the government's calculation. I'm going to ask the lawyer's to tell me what they think the calculation of the guidelines.  That is what the guidelines are likely to say.

1          MS. POKORNY:  Yes, your Honor.  Here the parties

2    are in agreement as set forth in paragraph two that the

3    guidelines call for life.

4          THE COURT:  Okay, so the applicable guideline

5    level is a life guideline.

6          MS. POKORNY:  That's right.

7          THE COURT:  And I also see that the defendant

8    agrees not to challenge that guideline calculation.  So, by

9    virtue of your agreement, Mr. Allen, you have agreed that

10   that is the proper calculation of the guidelines.

11          Is there any other agreement with respect to the

12   position that the defendant may take with respect to

13   sentence, however, Ms. Pokorny?

14          MS. POKORNY:  No.  The defendant as in this

15   agreement as all our agreements -- most, I should say,

16   leaves open the possibility for the defendant to seek a

17   lower sentence.

18          THE COURT:  Okay.  So, the defendant is free to

19   make the argument to Judge Block that he can depart from the

20   guidelines.

21          MS. POKORNY:  He's free to make that argument.

22          THE COURT:  Alright.  Alright, I do want to

23   emphasize that Judge Block will have to make his own

24   independent determination about the guidelines.  And then,

25   beyond that, he has to make his own determination about what

1    the proper sentence should be.

2              No one can tell you now how he will decide any

3    matters relating to sentence.  You won't know what those

4    decisions will be until the actual time of sentence.

5              Do you understand that?

6              THE DEFENDANT:  Yes, Sir.

7              THE COURT:  After sentence is imposed -- Well, let

8    me see.  There's not much left to appeal with respect to

9    sentence as I read this plea agreement, Ms. Pokorny.

10             MS. POKORNY:  No, the defendant has waived his

11   right to appeal.

12             THE COURT:  Essentially that's right.  So, if you

13   didn't have a plea agreement, Mr. Allen, you would have the

14   right to appeal your sentence to a higher Court even if you

15   plead guilty.

16             But by virtue of paragraph four of your plea

17   agreement, you've agreed that you will not file an appeal of

18   your sentence.

19             Do you understand that?

20             THE DEFENDANT:  Yes, Sir.

21             THE COURT:  Alright.  Do you have any questions

22   you'd like to ask me?  Do you have any questions about the

23   charge or your rights or about anything else related to this

24   matter which may not be clear?

25             THE DEFENDANT:  No, Sir.

1    THE COURT:  Mr. Donaldson, is there anything else

2  I should review with your client before proceeding to the

3  allocution?

4    MR. DONALDSON:  No, your Honor.

5    THE COURT:  Ms. Pokorny, is there anything further

6  I should review?

7    MS. POKORNY:  No, your Honor.

8    THE COURT:  Mr. Donaldson, do you know of any

9  reason why Mr. Allen should not enter a plea of guilty to

10  this charge?

11    MR. DONALDSON:  I do not.

12    THE COURT:  Are you aware of any viable legal, as

13  opposed to factual, defense to the charge?

14    MR. DONALDSON:  I do not.

15    THE COURT:  Mr. Allen, are you ready to plead?

16    THE DEFENDANT:  Yes, Sir.

17    THE COURT:  How do you plead to the charge

18  contained in the superseding information, guilty or not

19  guilty?

20    THE DEFENDANT:  Guilty, Sir.

21    THE COURT:  Are you making this plea of guilty

22  voluntarily and of your own free will?

23    THE DEFENDANT:  Yes, Sir.

24    THE COURT:  Has anybody threatened you or forced

25  you to plead guilty?

1                    THE DEFENDANT:  No, Sir.

2                    THE COURT:  Other than your agreement with the

3     government, has anyone made any promise to you that caused

4     you to plead guilty?

5                    THE DEFENDANT:  No, Sir.

6                    THE COURT:  Did anyone make any promise to you or

7     give you any assurances as to what your sentence will be?

8                    THE DEFENDANT:  No, Sir.

9                    THE COURT:  Alright, no one could do that because

10    Judge Block and Judge Block alone will have to make the

11    decision about your sentence.  And he won't make that

12    decision until the actual time of sentence.  So, I presume

13    that's clear?

14                   Is that clear, Sir?

15                   THE DEFENDANT:  Yes, Sir.

16                   THE COURT:  Can you tell me briefly in your own

17    words what you did in connection with this offense that

18    makes you guilty of the offense?

19                   THE DEFENDANT:  I, Russell Allen, as part of the

20    McGriff criminal enterprise in 2001 by Queens and elsewhere

21    agreed with others to kill Eric Smith and Troy Singleton on

22    July 16th by firing the weapon at or near Eric Smith.

23                   Regarding Troy Singleton, I did agree to kill him

24    and did participate in trying to locate him for the purpose

25    of killing him.

1          THE COURT:  So, as I understand it, you were part

2    of a group of people who worked together to earn money

3    through criminal activities.

4          THE DEFENDANT:  Yes, Sir.

5          THE COURT:  Alright.  And in connection with your

6    association with that group of people, you participated and

7    agreed with others to participate in the murders of both

8    Eric Smith, also known as E. Moneybags and Troy Singleton.

9          THE DEFENDANT:  Yes, Sir.

10          THE COURT:  And am I correct that your decision to

11    do that was for the purpose of furthering the purposes of

12    the enterprise that you described a moment ago?

13          THE DEFENDANT:  Yes, Sir.

14          THE COURT:  With respect to the murder of Mr.

15    Smith, what role did you play in connection with that?

16          THE DEFENDANT:  I was shooting, shooting at him.

17          THE COURT:  Alright, you actually pulled the

18    trigger on the weapon?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And I think you said with respect to

21    Mr. Singleton you participated in efforts to locate him for

22    the purpose of the murder?

23          THE DEFENDANT:  Yes, Sir.

24          THE COURT:  And you knew that that was the purpose

25    for which you were seeking to locate him?

1              THE DEFENDANT:  Yes, Sir.

2              THE COURT:  Is there anything further about which

3     I should inquire, Ms. Pokorny?

4              MS. POKORNY:  I would like to add that the

5     government would be prepared to prove the existence of the

6     McGriff Enterprise.  And that we would do that through

7     cooperator testimony, through the seizure of drugs and

8     significant quantities of money and text messages.

9              And we would also be prepared to prove that the

10    McGriff Enterprise affected interstate commerce by engaging

11    in drug trafficking in multiple states including New York,

12    Maryland and elsewhere.

13             THE COURT:  So, am I correct in understanding that

14    you had through testimony and corroborated by other physical

15    evidence that people associated with the same group of

16    people that Mr. Allen was part of engaged in money

17    laundering and narcotics activity?

18             MS. POKORNY:  Exactly.  Other than that --

19             THE COURT:  And that the activity affected

20    interstate commerce in that at least some of the activity

21    crossed state lines?

22             MS. POKORNY:  That's correct.

23             THE COURT:  Alright.  Is there anything further

24    about which I should inquire?

25             MS. POKORNY:  No, your Honor.

1          THE COURT:  Mr. Donaldson?

2          MR. DONALDSON:  No, your Honor.

3          THE COURT:  Alright, based on the information

4    that's been provided today, I do find that Mr. Allen

5    understands the charge.  He fully understands his rights and

6    the consequences of his plea.

7          I find also that there's a factual basis for the

8    plea.  And, therefore, I recommend that Judge Block accept

9    Mr. Allen's plea of guilty to the superseding information.

10         Has Judge Block set a date for sentencing, Mr.

11   Toritto?

12         THE CLERK:  No, your Honor.  It will set from the

13   Probation Department.

14         THE COURT:  Alright, so there's not now a date set

15   for your sentence, Mr. Allen.  That date will be set once

16   the Probation Department of the Court completes a

17   presentence report.

18         In order to prepare the presentence report a

19   probation officer will interview you.  You have the right to

20   have your attorney present during the interview.

21         You have the right to see the report that's

22   prepared as well.  And you'll have the right to bring to the

23   Court's attention any errors or any matters that are not

24   properly covered by the report.

25         You should bear in mind during the interview

1    process that the interview is the principal way that the

2    Court finds out about a defendant's background and personal

3    circumstances so that those matters can be brought to the

4    attention of the Court.

5            So, it is sometimes in the interest of the

6    defendant to cooperate with the probation officer during the

7    interview.  You should, of course, listen to your attorney's

8    advise with respect to that.

9            Is there any other matter to address today before

10   we adjourn, Counsel?

11           MS. POKORNY:  No, your Honor.

12           THE COURT:  Mr. Donaldson?

13           MR. DONALDSON:  No, your Honor.

14           THE COURT:  Alright.

15           ALL:  Thank you very much.

16           (Pause in proceedings)

17           THE COURT:  Alright, we are adjourned.  I will

18   return to counsel for the government the plea agreement

19   which was marked as Exhibit 1 to be maintained for further

20   proceedings that may be necessary.  And we're adjourned.

21               * * * * * * * * * * * *

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19   from the electronic sound recording of the proceedings in

20   the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                          July 22, 2008