PTH:JV

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                             Docket No. 04-CR-966-15 (WFK)

   RUSSELL ALLEN,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
## THE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

John Vagelatos
Assistant U.S. Attorney
    (Of Counsel)

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 1

I.   THE OFFENSE CONDUCT AND SENTENCING ...................................................... 1

II.  THE COVID-19 PANDEMIC AND THE BUREAU OF PRISONS' RESPONSE ......... 2

III. THE DEFENDANT'S HEALTH AND PERTINENT MEDICAL HISTORY ................ 4

ARGUMENT ....................................................................................................................... 6

I.   THE DEFENDANT HAS FAILED TO EXHAUST HIS ADMINISTRATIVE
     REMEDIES .............................................................................................................. 7

     A.  Applicable Law ................................................................................................ 7

     B.  Analysis ......................................................................................................... 10

II.  THE DEFENDANT HAS NOT MET HIS HIGH BURDEN TO SHOW
     EXTRAORDINARY AND COMPELLING REASONS WARRANTING
     RELEASE ............................................................................................................... 11

     A.  Applicable Law .............................................................................................. 11

     B.  Analysis ......................................................................................................... 14

CONCLUSION .................................................................................................................. 19

TABLE OF AUTHORITIES

**Cases**

Bastek v. Fed. Crop Ins. Corp.,
    145 F.3d 90 (2d Cir. 1998) ................................................................ 8

Booth v. Churner,
    532 U.S. 731 (2001) ......................................................................... 8

Cannon v. United States,
    No. CR 11-048 (CG), 2019 WL 5580233 (S.D. Ala. Oct. 29, 2019) ................................. 13

Eberhart v. United States,
    546 U.S. 12 (2005) ........................................................................... 8

Fry v. Napoleon Community Schools,
    137 S. Ct. 743 (2017) ....................................................................... 8

McCarthy v. Madigan,
    503 U.S. 140 (1992) ......................................................................... 10

Ross v. Blake,
    136 S. Ct. 1850 (2016) ................................................................. 7-8, 9, 10

Theodoropoulos v. I.N.S.,
    358 F.3d 162 (2d Cir. 2004) ................................................................. 8

United States v. Bolino,
    No. 06-CR-806 (BMC), 2020 WL 32461 (E.D.N.Y. Jan. 2, 2020) ..................................... 9

United States v. Butler,
    970 F.2d 1017 (2d Cir. 1992) ............................................................... 13

United States v. Cohen,
    No. 17-CR-544 (NGG) (E.D.N.Y. Mar. 25, 2020) ................................................. 17

United States v. Davis,
    No. 96-CR-912 (ERK) (E.D.N.Y. Apr. 14, 2020) ................................................. 9

United States v. Demaria,
    No. 17-CR-569 (ER), 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020) ................................. 11

United States v. Ebbers,
    No. 02-CR-11443 (VEC), 2020 WL 91399 (S.D.N.Y. Jan. 8, 2020)................................. 15

United States v. Flories,
    No. 15-CR-152 (RRM) (E.D.N.Y. Apr. 12, 2020) ............................................................... 9

United States v. Gagne,
    No. 3:18-CR-242 (VLB), 2020 WL 1640152 (D. Conn. Apr. 2, 2020) ....................... 14, 17

United States v. Gileno,
    19-CR-161 (VAB), 2020 WL 13071087 (D. Conn. Mar. 19, 2020) ................................. 17

United States v. Gotti,
    No. 02-CR-743 (CM), 2020 WL 497987 (S.D.N.Y. Jan. 15, 2020) ........................... 13, 18

United States v. Greenhut,
    No. 18-CR-00048 (CAS), 2019 WL 6218952 (C.D. Cal. Nov. 21, 2019) ........................ 13

United States v. Gross,
    No. 15-CR-769 (AJN), 2020 WL 1862251 (S.D.N.Y. Apr. 14, 2020) ............................... 8

United States v. Hamilton,
    715 F.3d 328 (11th Cir. 2013) ......................................................................................... 13

United States v. Hill,
    No. 16-CR-397 (LTS), 2020 WL 1911206 (S.D.N.Y. Apr. 20, 2020)........................ 10-11

United States v. Johnson,
    No. 98-CR-860 (ARR) (E.D.N.Y. May 4, 2020) .............................................................. 14

United States v. Jones,
    836 F.3d 896 (8th Cir. 2016) ........................................................................................... 13

United States v. Martin,
    No. 18-CR-834 (PAE), 2020 WL 1819961 (S.D.N.Y. Apr. 10, 2020) ............................. 18

United States v. Monzon,
    No. 99-CR-157 (DLC), 2020 WL 550220 (S.D.N.Y. Feb. 4, 2020) ................................... 8

United States v. Napout,
    No. 15-CR-252 (PKC), 2020 WL 1872455 (E.D.N.Y. Apr. 14, 2020)............................... 9

United States v. Ogarro,
No. 18-CR-373-9 (RJS), 2020 WL 1876300 (S.D.N.Y. Apr. 14, 2020) ........................ 6, 11

United States v. Perez,
No. 17-CR-513 (AT), 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020) .................................. 10

United States v. Quashie,
No. 14-CR-376 (BMC) (E.D.N.Y. Apr. 20, 2020) .............................................................. 6

United States v. Raia,
No. 20-1033, 2020 WL 1647922 (3d Cir. Apr. 2, 2020) ................................................... 8-9

United States v. Roberts,
No. 18-CR-528 (JMF), 2020 WL 1700032 (S.D.N.Y. Apr. 8, 2020) ........................... 9, 18

United States v. Sawicz,
No. 08-CR-287 (ARR) (E.D.N.Y. Apr. 10, 2020) ............................................................ 10

United States v. Taylor,
778 F.3d 667 (7th Cir. 2015) ............................................................................................ 8

United States v. Traynor,
No. 04-CR-0582 (NGG), 2009 WL 368927 (E.D.N.Y. Feb. 13, 2009) ............ 11, 12, 15-16

United States v. Urso,
No. 03-CR-1382 (NGG), 2019 WL 5423431 (E.D.N.Y. Oct. 23, 2019) .......................... 15

United States v. Washington,
No. 13-020 (DCR), 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019) ................................... 17

United States v. Woodson,
No. 18-CR-845 (PKC), 2020 WL 1673253 (S.D.N.Y. Apr. 6, 2020) .............................. 10

United States v. Wright,
No. 17-CR-695 (CM), 2020 WL 1922371 (S.D.N.Y. Apr. 20, 2020) ........................ 10, 15

United States v. Zuckerman,
No. 16-CR-194 (AT), 2020 WL 1659880 (S.D.N.Y. Apr. 3, 2020) .............................. 9-10

Washington v. Barr,
925 F.3d 109 (2d Cir. 2019) ............................................................................................ 10

Regulations

18 U.S.C. § 1961 ................................................................................................................ 1

18 U.S.C. § 1962 ................................................................................................................ 1

18 U.S.C. § 1963 ................................................................................................................ 1

18 U.S.C. § 3512 ................................................................................................................ 6

18 U.S.C. § 3553 ................................................................................................ 12, 13, 18

18 U.S.C. § 3582 .......................................................................................................... *passim*

18 U.S.C. § 3624 ............................................................................................................ 3, 6

28 U.S.C. § 994 ........................................................................................................... 12, 17

34 U.S.C. § 60541 ............................................................................................................. 3

50 U.S.C. §1601 ................................................................................................................ 2

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant Russell Allen's motion for compassionate release. (See Def. Mot., ECF No. 931.) In essence, Allen argues that his immediate release from prison is warranted to protect himself from contracting COVID-19 while in custody. For the reasons set forth below, the defendant's motion for this extraordinary form of relief should be denied.

BACKGROUND

I.        THE OFFENSE CONDUCT AND SENTENCING

On June 3, 2008, the defendant pleaded guilty to a single-count Superseding Information. (ECF No. 805.) The Superseding Information charged that between May 2001 and November 2001, the defendant engaged in a racketeering enterprise in violation of 18 U.S.C. § 1961(1) and (5), 1962(c) and 1963. (Id.; Presentence Investigation Report dated July 24, 2009 ("PSR") ¶ 1.) The Superseding Information further charged that, as part of that enterprise, the defendant caused the death of Eric Smith (Racketeering Act One) and conspired to murder Troy Singleton (Racketeering Act Two). (ECF No. 805; PSR ¶ 1.)

On November 12, 2009, the Honorable Frederic Block sentenced the defendant principally to 360 months' imprisonment to be followed by a five-year term of supervised release. (ECF Entry dated Nov. 12, 2009.)

The defendant is currently serving his sentence at the United States Federal Correction Institution Yazoo City Low, Mississippi ("FCI Yazoo City Low"). (See Def. Mot., ECF No. 931; https://www.bop.gov/locations/institutions/yaz/.) FCI Yazoo City Low is a low security facility within the Yazoo City Federal Correctional Complex. See https://www.bop.gov/locations/institutions/yaz/. The Yazoo City Federal Correctional

Complex also contains separate medium-security and high-security facilities.  See id.
FCC Yazoo City Low currently houses 1,775 total inmates, including 148 inmates at the
minimum-security Camp and 1,627 inmates at the low-security FCI.  (Id.)

II.     THE COVID-19 PANDEMIC AND THE BUREAU OF PRISONS' RESPONSE

On March 13, 2020, the President of the United States declared a National
Emergency in response to the COVID-19 pandemic pursuant to the National Emergencies
Act (50 U.S.C. § 1601, et seq.).  Even before that date, the Bureau of Prisons ("BOP") began
implementing national measures to mitigate the spread of COVID-19 within prisons.  See
BOP resources page, available at https://www.bop.gov/coronavirus/; Federal Bureau of
Prisons COVID-19 Action Plan, available at https://www.bop.gov/coronavirus/covid19_
status.jsp; Federal Bureau of Prisons COVID-19 Action Plan: Phase Six, available at https:
//www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf.  These
measures, which have been implemented at FCI Yazoo City Low, where the defendant is
incarcerated, include the following:

- Suspension of all social and legal visits.  Social visits and legal visits have
  been suspended until at least May 18, 2020, with case-by-case
  accommodations for attorney visits and legal calls.  Inmates will be
  provided additional inmate telephone minutes each month.

- Inmate movement.  All inmate facility transfers have been suspended until
  at least May 18, 2020, with exceptions permitted for forensic studies or
  medical or mental health treatment.

- Screening and testing of inmates.  All newly-arriving BOP inmates are
  screened for COVID-19 exposure risk factors and symptoms.  Inmates
  with exposure risk factors are quarantined.  In addition, inmates exhibiting
  flu-like symptoms are isolated and tested for COVID-19 in accordance
  with local health authority protocols.

- Modified Operations.  The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.  That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).  See Mem. from the Attorney General for the Director of Bureau of Prisons, Mar.  26, 2020, available at https://www.justice.gov/file/1262731/download.  Further, Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."  On April 3, 2020, the Attorney General found that such emergency conditions exist and directed the Director of the Bureau of Prisons to maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and other similarly-situated facilities where COVID-19 is materially affecting prison operations.  See Mem. from the Attorney General for the Director of Bureau of Prisons, Apr. 3, 2020, available at https://www.justice.gov/file/1266661/download.  Notably, certain offenses render an inmate ineligible for home detention

3

and other serious offenses weigh more heavily against consideration for home detention.  See Mem. from the Attorney General for the Director of Bureau of Prisons, Mar. 26, 2020.

As noted, the defendant is housed at FCI Yazoo City Low, a low-security facility that forms part of the Federal Correctional Complex in Yazoo City, Mississippi. As FCI Yazoo City Low is a separate facility from the other facilities in the Yazoo City prison complex.

The BOP website reports that, as of May 7, 2020, 50 inmates and 4 staff members at FCI Yazoo City Low have tested positive for COVID-19.  See https://www.bop.gov/coronavirus/.  Of those 50 inmates and 4 staff members who tested positive, 44 of the inmates and 2 of the staff members have recovered.  Id.  There have been no deaths at FCI Yazoo City Low.  Id.  The 50 inmate cases are among a total of 1,775 total inmates housed at FCI Yazoo City Low, or 2.8% of the total inmate population.  See https://www.bop.gov/locations/institutions/yaz/.

## III.    THE DEFENDANT'S HEALTH AND PERTINENT MEDICAL HISTORY

The defendant asserts that he has "a heart condition and other medical conditions which increase[] petitioner['s] risk to attract this Deadly Disease Covid 19." (Def. Mot. at 3.)

The defendant is essentially healthy.  (PSR ¶ 115.)  Notably, he has had a heart murmur since birth.[1]  (PSR ¶ 112.)  In 2005, he "passed out" and the doctors recommended

---

[1] "Innocent heart murmurs are sounds made by blood circulating through the heart's chambers and valves, or through blood vessels near the heart. Innocent murmurs are common in children and are harmless. … Most innocent murmurs disappear when a child reaches

he receive a pacemaker, but he refused.  (PSR ¶ 113.)

On February 4, 2020, after being housed on a unit with an individual who had been diagnosed with active tuberculosis, the defendant was evaluated to rule out tuberculosis. The defendant had no complaints and denied unexplained weight loss, fever, night sweats, coughing up blood or coughing for longer than 14 days.  He was assessed as having no signs or symptoms of active tuberculosis and was advised on access to care as needed.

On February 6, 2020, a month before the current health care crisis struck this country, BOP evaluated the defendant's health and medical history in connection with an intra-system transfer.  The defendant's medical records note dental caries (tooth decay), constipation, a suspected tear of the meniscus in his knee, lower back pain, unspecified abdominal pain and a headache.  The records also noted bradycardia[2] and his suspected exposure to tuberculosis.  The defendant again reported no symptoms of tuberculosis (i.e., blood-tinged sputum, night sweats, weight loss, fever or cough).

On April 8, 2020, as a precautionary measure after contact with an individual who was positive for COVID-19, the defendant was placed in quarantine despite being asymptomatic.  From April 8, 2020 to April 20, 2020, the defendant did not seek out any additional medical care or present with any complaints.

On April 20, 2020, the defendant received a follow-up clinical examination. In his interview, he had no complaints and denied any pain, weight loss, fever, cough, night

---

adulthood, but some adults still have them. … Other, non-innocent heart murmurs are often caused by defective heart valves."  https://www.heart.org/en/health-topics/heart-murmurs.

[2] Bradycardia is a slower-than-normal heart rate.  See https://www.heart.org/en/health-topics/arrhythmia/about-arrhythmia/bradycardia--slow-heart-rate.

sweats or bloody sputum.  He was assessed as having no significant findings or apparent

distress.  He was counseled about access to care and told to seek medical attention as needed.

He verbally acknowledged his understanding.

On or about April 21, 2020, the defendant mailed the current motion.  See Def.

Mot. at 5 (Stamp on envelope stating "THE ENCLOSED LETTER WAS PROCESSED ON

4-21-2020 THROUGH SPECIAL MAILING PROCEDURES.").  At that time, the defendant

stated that his "housing unit is under quarantine for exposure to Covid-19 with 12 inmates in

[his] unit hospitalized over a 2 week span."  (Def. Mot. at 1.)

## ARGUMENT

The defendant seeks a modification of an imposed term of imprisonment

pursuant to 18 U.S.C. § 3512(c)(1)(A) and the CARES Act of 2020.  (Def. Mot. at 1.)

Specifically, the defendant requests compassionate release to home confinement "to care for

his elderly mother who suffers from C.O.P.D., diabetes, high blood pressure and an

enlarge[d] heart."  (Id. at 3.)[3]  Although the government appreciates that COVID-19 poses a

danger to all individuals, including individuals like the defendant who are in generally good

---

[3] In order to fashion a legal sentence that grants the defendant's request for "home
confinement," the Court would have to grant the defendant compassionate release, to be
followed by a period of supervised release including a special condition of home
confinement.  That is because "home confinement" is a separate, discretionary program for
an inmate nearing the end of his sentence.  See 18 U.S.C. § 3624(c)(2); United States v.
Ogarro, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020) (noting
that home confinement under 18 U.S.C. § 3624 is a remedy "exclusively within the
discretion of the BOP" that "the Court lacks authority to order").  Thus, the government
construes the defendant's motion as one for compassionate release.  See, e.g., Order, United
States v. Quashie, No. 14-CR-376 (BMC) (E.D.N.Y. Apr. 20, 2020), ECF No. 247
(construing motion for release from custody and home confinement as a motion for
compassionate release).

health, the Court should deny the instant motion for two independent reasons.  First, the defendant has failed to exhaust his administrative remedies as required under 18 U.S.C. § 3582(c)(1)(A)(i).  Second, the defendant has not demonstrated "extraordinary and compelling reasons" justifying his early release from prison.

I.     THE DEFENDANT HAS FAILED TO EXHAUST HIS ADMINISTRATIVE
       REMEDIES

       A.     Applicable Law

              The statute upon which the defendant relies, commonly referred to as the "compassionate release" statute, permits a court to modify an already imposed sentence upon a showing of "extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  A motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  Id.  Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.  18 U.S.C. § 3582(c).

              Section 3582(c)'s exhaustion requirement is statutory; thus, it is not a judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions."  Ross v. Blake, 136 S. Ct. 1850, 1857 (2016).  Indeed, statutory exhaustion requirements "stand[] on a different footing."  Id.  Here, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."  Id.  Where, as here, a statute makes clear that a defendant must show that he has "fully exhausted all administrative

7

rights," the defendant cannot be excused from that obligation.  See Booth v. Churner, 532

U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory

exhaustion requirements where Congress has provided otherwise."); Theodoropoulos v.

I.N.S., 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are required to strictly

enforce statutory exhaustion requirements"); United States v. Gross, No. 15-CR-769 (AJN),

2020 WL 1862251, at *1 (S.D.N.Y. Apr. 14, 2020) ("Faced with unambiguous statutory

language requiring exhaustion of administrative remedies, we are not free to rewrite the

statutory text." (quoting Bastek v. Fed. Crop Ins. Corp., 145 F.3d 90, 94 (2d Cir. 1998)); cf.

Fry v. Napoleon Community Schools, 137 S. Ct. 743, 750 (2017) (stating that statute

requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion

provision for those types of claims).

Consequently, a court lacks the authority to grant a defendant's compassionate

release motion absent exhaustion of the administrative remedies, as numerous courts—

including the only Court of Appeals to have addressed the issue—have held.[4]  See United

---

[4] While the "Second Circuit has not yet answered the question of whether § 3582(c) is jurisdictional," several courts of appeals have held that it is.  See, e.g., United States v. Monzon, No. 99-CR-157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing cases).  But see United States v. Taylor, 778 F.3d 667 (7th Cir. 2015) (holding that § 3582(c) is not jurisdictional).  In any event, the exhaustion requirement of Section 3582(c)(1)(A), at a minimum, is a mandatory claim-processing rule and must be enforced if, as the government has done here, a party "properly raise[s]" it.  See Eberhart v. United States, 546 U.S. 12, 16 (2005) (per curiam) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a non-jurisdictional but mandatory claim-processing rule); see also Monzon, 2020 WL 550220, at *2 (noting that even if the exhaustion requirement is not jurisdictional, it is a "statutory exhaustion requirement" that must be "strictly enforced"); Gross, 2020 WL 1862251, at *4 (finding that the exhaustion requirement was not jurisdictional but still mandatory as it constitutes a "claim-processing rule").

States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (holding that "any remand" to the district court to consider a compassionate release motion "would be futile" in light of the defendant's failure to exhaust, which "presents a glaring roadblock foreclosing compassionate release"); United States v. Napout, No. 15-CR-252 (PKC), 2020 WL 1872455, at *1 (E.D.N.Y. Apr. 14, 2020) (citing cases); United States v. Davis, No. 96-CR-912 (ERK), ECF Order dated April 14, 2020 (E.D.N.Y. Apr. 14, 2020) (denying motion to reduce sentence for failure to exhaust administrative remedies); United States v. Flores, No. 15-CR-152 (RRM), ECF No. 47 (E.D.N.Y. Apr. 12, 2020) ("As a threshold matter, Flores has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence."); United States v. Roberts, No. 18-CR-528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (noting that "[c]ourts do have some flexibility to disregard exhaustion requirements when they are judicially imposed" but, "[a]s the Supreme Court has emphasized . . . 'a statutory exhaustion provision stands on different footing'" (quoting Ross, 136 S. Ct. at  1857)); United States v. Bolino, No. 06-CR-806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) ("The submission of a sufficient record to show exhaustion, at least to the extent of the [BOP's] General Counsel's rejection of an appeal, is fundamental to this Court's function in deciding a compassionate release motion.  Congress clearly wanted these applications decided at the administrative level if possible.").[5]

---

[5] But see United States v. Zuckerman, No. 16-CR-194 (AT), 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) ("[T]he Court holds that Zukerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his

B.      Analysis

The United States has conferred with BOP counsel for the Yazoo City Federal

Correctional Complex ("BOP").  BOP has advised that, as of May 6, 2020, the defendant has

not submitted any request for the warden of defendant's facility to bring a motion for

compassionate release on his behalf.  As the defendant has failed to exhaust, or even pursue,

his administrative remedies, the Court should deny the instant motion on this basis alone.

Compassionate release is covered by a mandatory, statutory exhaustion

requirement, which the Court cannot disregard.[6]  See United States v. Wright, No. 17-CR-

695 (CM), 2020 WL 1922371, at *3 (S.D.N.Y. Apr. 20, 2020) (distinguishing Washington v.

Barr and holding that "compliance with a statutorily imposed exhaustion requirement could

not be waived by a court in the absence of the government's consent"); United States v. Hill,

_____

unique circumstances—by the COVID-19 pandemic."); United States v. Perez, No. 17-CR-513 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (finding that exceptions to the exhaustion requirement apply, emphasizing that the defendant's three-week sentence would expire before the exhaustion period ends).

[6] While Washington v. Barr states that the exhaustion requirement is not absolute when mandated "by statute or decisional law," 925 F.3d 109, 118 (2d Cir. 2019) (emphasis added) (quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)), the court in that case appears to have disregarded the critical distinction between statutory and judge-made exhaustion requirements articulated by the Supreme Court in Ross.  See, e.g., United States v. Woodson, No. 18-CR-845 (PKC), 2020 WL 1673253, at *3 (S.D.N.Y. Apr. 6, 2020) (noting that the reference in Washington that statutory exhaustion requirements are not absolute was both dicta and incorrect); but see United States v. Sawicz, No. 08-CR-287 (ARR) (E.D.N.Y. Apr. 10, 2020).  Washington's reliance, moreover, on the Supreme Court's decision in McCarthy v. Madigan, which clearly distinguishes between judicial exhaustion requirements and those mandated by statute, further undermines this position.  See McCarthy, 503 U.S. at 152 ("Because Congress has not required exhaustion of a federal prisoner's Bivens claim, we turn to an evaluation of the individual and institutional interests at stake in this case." (emphasis in original)).

No. 16-CR-397 (LTS), 2020 WL 1911206, at *2 (S.D.N.Y. Apr. 20, 2020) (same); United

States v. Demaria, No. 17-CR-569 (ER), 2020 WL 1888910, at *4 (S.D.N.Y. Apr. 16, 2020)

(same); United States v. Ogarro, No. 18-CR-373-9 (RJS), 2020 WL 1876300, at *4

(S.D.N.Y. Apr. 14, 2020) (same).

       In short, the defendant's motion is premature.  The Court should, therefore,

deny it.

II.     THE DEFENDANT HAS NOT MET HIS HIGH BURDEN TO SHOW
      EXTRAORDINARY AND COMPELLING REASONS WARRANTING RELEASE

    A.    Applicable Law

       If the defendant had pursued *and* exhausted his administrative remedies,

§ 3582(c)(1)(A)(i) allows modification of the already imposed sentence upon a showing of

"extraordinary and compelling reasons."  18 U.S.C. § 3582(c)(1)(A)(i).  The United States

Sentencing Guidelines and BOP policy have established clear criteria to aid in a court's

determination of when compassionate release is appropriate pursuant to § 3582(c)(1)(A)(i).

See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50 ("Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and

4205(g)"), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  Both the

Guidelines and the BOP Program Statement primarily limit compassionate relief to cases of

serious illness or impairment, advanced age, or a need to care for a family member.  See id.;

see also United States v. Traynor, No. 04-CR-0582 (NGG), 2009 WL 368927, at *1 n.2

(E.D.N.Y. Feb. 13, 2009).  In particular, the United States Sentencing Guidelines provide the

following explanation of "extraordinary and compelling reasons" that may exist due to a

defendant's medical condition:

> (A) <u>Medical Condition of the Defendant</u>.–
>
>> (i) The defendant is suffering from a terminal illness
>> (<u>i.e.</u>, a serious physical and advanced illness with an end
>> of life trajectory) . . .
>>
>> (ii) The defendant is–
>>
>>> (I) suffering from a serious physical or medical
>>> condition,
>>>
>>> (II) suffering from a serious functional or
>>> cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental
>>> health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant
>> to provide self-care within the environment of a
>> correctional facility and from which he or she is not
>> expected to recover.

U.S.S.G. § 1B1.13, Application Note 1; <u>see also</u> 28 U.S.C. § 994 (authorizing Sentencing

Commission to describe criteria that should be considered extraordinary and compelling

reasons for sentence reduction).  As recognized in <u>Traynor</u>, Congress indicated that

§ 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so

changed, such as by terminal illness, that it would be inequitable to continue the confinement

of the prisoner."  <u>Id.</u> at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., <u>reprinted</u>

in 1984 U.S.C.C.A.N. 3182, 3304).

If a court finds such "extraordinary and compelling reasons," it may reduce the

sentence "after considering the factors set forth in section 3553(a) to the extent that they are

applicable," as well as any applicable policy statements in the Sentencing Guidelines.  <u>Id.</u>

12

Thus, the existence of extraordinary and compelling reasons per se does not compel compassionate release if the Court determines that the § 3553(a) factors warrant continued imprisonment.  See United States v. Gotti, No. 02-CR-743 (CM), 2020 WL 497987, at *2 (S.D.N.Y. Jan. 15, 2020) ("It is important to note that a defendant who meets all the criteria for compassionate release consideration listed above is not thereby automatically entitled to a sentence modification.  He is simply eligible for a sentence modification.  The court confronted with a compassionate release motion is still required to consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.").

A defendant seeking relief under § 3582(c)(1)(A) "bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction."  United States v. Greenhut, No. 18-CR-00048 (CAS), 2019 WL 6218952, at *1 (C.D. Cal. Nov. 21, 2019); Cannon v. United States, No. CR 11-048 (CG), 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."); see also United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016) (same under § 3582(c)(2)); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) (same); see generally United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

B.    Analysis

While COVID-19 presents a serious societal risk, the defendant's motion fails
to provide sufficient grounds to conclude that current conditions are so "extraordinary and
compelling" that he should be released 216 months through a 360 month sentence – in other
words, with 144 months (i.e., 12 years) remaining on his sentence.

First, the defendant has not established that his medical conditions "increases
petitioner['s] risk to attract" COVID-19 or put him at high risk if he contracts COVID-19.
The defendant's only relevant current noted condition is bradycardia and a historically-noted
heart murmur "since birth."  The defendant has presented no evidence that these conditions
present any serious or unique health challenges or risks in relation to COVID-19.  See United
States v. Johnson, No. 98-CR-860 (ARR), ECF No. 509, at 4 (E.D.N.Y. May 4, 2020) (high
blood pressure and heart murmur "do not meet the standard of extraordinary or compelling
circumstances, even in light of the COVID-19 pandemic"); United States v. Gagne, No.
3:18-CR-242 (VLB), 2020 WL 1640152, at *5 (D. Conn. Apr. 2, 2020) (denying
compassionate release motion where the defendant had not "presented information to show
that her specific medical conditions, medications, and conditions of confinement at FCI
Danbury are inclined to uniquely and adversely affect her to the degree sufficient to establish
'extraordinary and compelling' reasons").  Simply put, all prisoners at FCI Yazoo City Low,
and in the BOP more broadly, are at some risk of contracting COVID-19.  This does not put
Allen, individually, in an extraordinary and compelling situation, and does not warrant a
sentence modification.

Even assuming arguendo that bradycardia and a heart murmur are serious
illnesses that increase the health risks of COVID-19, that potentially increased risk is not per

14

se a basis to grant compassionate release.  The defendant does not suffer from a terminal illness, and he offers no proof that his medical condition "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility" or is a condition "from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, Application Note 1.  For this reason alone, the Court should deny the motion.  See, e.g., Wright, 2020 WL 1922371, at *3 (denying motion for compassionate release where, notwithstanding the existence of COVID-19, defendant failed to present evidence of terminal illness or that his medical conditions 'substantially diminish' his ability to provide self-care"); United States v. Urso, No. 03-CR-1382 (NGG), 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (denying motion for compassionate release and noting "that while Petitioner suffers from several physical ailments, some of which are serious and chronic, he does not allege that he suffers from a terminal illness"); see also United States v. Ebbers, No. 02-CR-11443 (VEC), 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020) (noting that "the Medical Condition Note [of the Guidelines] applies to a defendant younger than 65 who has a specific life-ending or debilitating illness with a predictable, dire short-term prognosis" (emphasis added)).[7]

Thus, the potential risk of acquiring COVID-19 does not represent a changed circumstance for the defendant warranting a radical reduction of the Court's original sentence.  Cf. Traynor, 2009 WL 368927, at *1 (noting that § 3582(c)(1) "applies . . . to the

---

[7] A separate section of the Guidelines note applies to defendants aged 65 and older.  See Ebbers, 2020 WL 91399, at *6 (explaining difference between the "Medical Condition Note," which applies to "a defendant younger than 65 who has a specific life-ending or debilitating illness with a predictable, dire short-term prognosis," and the "Age of Defendant Note," which applies to a defendant 65 or older).  That policy note does not apply here because the defendant is 42 years old.  See PSR at 2 (showing defendant was born in 1977).

unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner").

Second, the defendant overstates the crisis at his facility, FCI Yazoo City Low. Although the defendant claims that his "current institution has the most cases of Covid-19," the infection rate is relatively similar to, or lower than, that of the general public. As noted above, the defendant is housed at FCI Yazoo City Low, which is a separate facility from both the high-security and medium-security facilities. FCI Yazoo City Low, the defendant's low-security facility, has 1,775 total inmates, and has had 50 confirmed inmate and 4 confirmed staff cases of COVID-19, with no deaths, a 2.8% confirmed infection rate. See https://www.bop.gov/coronavirus/; https://www.bop.gov/locations/institutions/yaz/. FCI Yazoo City Low's 2.8% confirmed infection rate is relatively similar to New York City's current 2.0% rate of confirmed cases. See https://www1.nyc.gov/site/doh/covid/covid-19-data.page (showing 174,709 cases as of May 7, 2010); https://data.cityofnewyork.us/City-Government/2020-population/t8c6-3i7b (showing 2020 New York City population of 8,550,971). The FCI Yazoo City Low confirmed infection rate is also markedly lower than the 12.3 % of New York State residents and 19.9% of New York City residents who have tested positive for COVID-19 antibodies. See https://www.governor.ny.gov/news/amid-ongoing-covid-19-pandemic-governor-cuomo-announces-results-completed-antibody-testing. Moreover, as of May 7, 2020, 44 of the 50 inmates with positive diagnoses for COVID-19 have recovered according to the BOP website. See https://www.bop.gov/coronavirus/.

The defendant also fails to establish, as is his burden, that the BOP is incapable of addressing the pandemic to sufficiently safeguard the defendant. As the

defendant concedes, BOP has placed his unit in quarantine and hospitalized residents potentially positive for COVID-19.  Moreover, the BOP has implemented national measures to mitigate the spread of COVID-19 within prisons, as discussed above.  The risk of potential exposure to COVID-19 in a BOP facility cannot alone form the basis to release a prisoner who makes a motion for release, particularly in a case such as this one where the defendant is not in a high-risk category.  See, e.g., United States v. Cohen, No. 17-CR-544 (NGG) (E.D.N.Y. Mar. 25, 2020), Order dated Mar. 25, 2020 (denying compassionate release motion for 48-year-old, white collar defendant housed at FCI Berlin); Gagne, 2020 WL 1640152, at *5 (defendant had not "shown that the BOP's response to confirmed cases at FCI Danbury has been inadequate from a medical standpoint"); United States v. Gileno, 19-CR-161 (VAB), 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) (stating that defendant had not shown that BOP plan to address the COVID-19 pandemic was inadequate or that BOP would be unable to manage the outbreak or adequately treat the defendant).

Third, the defendant's claim of education coursework while in prison is irrelevant for purposes of this motion.  Congress has mandated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" warranting compassionate release.  28 U.S.C. § 994(t) (statement of Congress in enacting the Sentencing Reform Act); see also United States v. Washington, No. 13-020 (DCR), 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019) (denying motion to modify a sentence, noting that the "language of § 994(t) evidences clear congressional intent to bar relief based on rehabilitation alone").

Finally, even if the defendant could establish "extraordinary and compelling reasons" for his release—which he cannot—the Court should deny the instant motion

17

because balancing such reasons against the factors set forth in 18 U.S.C. § 3553(a)

demonstrates that the defendant should complete his term of imprisonment.  See Gotti, 2020

WL 497987, at *2 ("The court confronted with a compassionate release motion is still

required to consider all the Section 3553(a) factors to the extent they are applicable, and may

deny such a motion if, in its discretion, compassionate release is not warranted because

Section 3553(a) factors override, in any particular case, what would otherwise be

extraordinary and compelling circumstances.").

        The offenses of conviction are serious and prove the defendant's

dangerousness.  The defendant was part of a RICO enterprise that murdered one victim and

conspired to murder another.  As of this month, the defendant has served approximately 216

months—i.e., 60%—of his sentence.  Effectively halving the defendant's sentence at this

juncture "would disserve" the § 3553(a) factors for sentencing.  See United States v.

Martin, No. 18-CR-834 (PAE), 2020 WL 1819961, at *4 (S.D.N.Y. Apr. 10, 2020)

("Converting [the defendant's] sentence to one of home confinement, when he has served

just 16 months of a 66-month term of incarceration, would disserve these important §

3553(a) factors.").  For instance, in United States v. Roberts, the court denied a motion for

compassionate release filed by a defendant who has HIV and is detained at the Metropolitan

Correctional Center ("MCC") in Manhattan.  See No. 18-CR-528-5 (JMF), 2020 WL

1700032 (S.D.N.Y. Apr. 8, 2020).  The court acknowledged that "HIV patients—at least

those whose HIV is not well-controlled—are among the most immunocompromised," id. at

*4, but concluded that compassionate release would represent an unwarranted "windfall," id.

at *3.

CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should deny the defendant's motion for compassionate release.

Dated:   Brooklyn, New York
         May 8, 2020

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, New York 11201

By:   /s/ John Vagelatos
      John Vagelatos
      Assistant United States Attorney
      (718) 254-6182

19